IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THOMAS CHARLES GUIRKIN, JR., M.D.,

    Plaintiff,

v.                                                  Civil Action No. 3:20cv59

CMH PHYSICIAN SERVICES, LLC,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant CMH Physician Services, LLC's ("CMH") Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6).[2] (ECF No. 4.) Plaintiff Thomas Charles Guirkin, Jr., M.D. responded, (ECF No. 8), and Defendant replied, (ECF No. 9). Guirkin and CMH then filed a Joint Motion regarding Guirkin's Notice of Supplemental Authority (the "Joint Motion"). (ECF No. 14.)

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[3] and

---

[1] Rule 12(b)(1) allows dismissal for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

[2] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Complaint alleges that CMH violated Guirkin's rights pursuant to 42 U.S.C. § 2000e ("Title VII").

1367(a).[4] For the reasons that follow, the Court will deny CMH's Motion to Dismiss, and grant the Parties' Joint Motion.

## I. Factual and Procedural Background

This employment action arises out of CMH's termination of Guirkin's employment allegedly based on Dr. Guirkin's sexual orientation as a gay man. Dr. Guirkin claims that CMH's decision to fire him because of his sexual orientation constitutes sex discrimination under Title VII, 42 U.S.C. § 2000(e)[5] and violates his employment agreement with CMH because his termination was on account of his sexual orientation and not "for cause." (Compl. ¶¶ 28, 53, ECF No. 1.)

### A. Factual Background[6]

Around November 19, 2018, CMH offered Dr. Guirkin a position as the Vice President of Medical Affairs/Chief Medical Officer of CMH. (Compl. ¶ 6.) "CMH is a medical group that provides physicians [with] work [in] medical facilities throughout" Virginia. (*Id.* ¶ 8.) On November 26, 2018, Guirkin and CMH executed a Physician Employment Agreement that

---

[4] The Court exercises supplemental jurisdiction over Guirkin's breach of contract claim pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

[5] Title VII states that employers cannot "discriminate against any individual with respect to [his or her] compensation, terms, conditions, or privileges of employment because of such individual's" race or sex. 42 U.S.C. § 2000e-2(a)(1).

[6] For the purpose of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in Guirkin's Complaint as true, and draw all reasonable inferences in favor of Guirkin. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

2

"provided a term of employment from March 10, 2019 through June 30, 2020." (*Id.* ¶¶ 9–10.) Around April 24, 2019, CMH terminated Guirkin's employment. (*Id.* ¶¶ 11, 26.)

The "decision to hire . . . Guirkin was one made by the Hiring Committee," to whom Guirkin did not disclose his sexual orientation. (*Id.* ¶ 13.) Once Guirkin was hired, "his supervisors and co-workers, including [CMH Chief Executive Officer ("CEO"), W. Scott] Burnette and [CMH President, Thomas] Yackel[,] were aware of [his] sexual orientation," as Guirkin "openly referenced and introduced co-workers to his husband." (*Id.* ¶ 15.)

Approximately seven months later, in November 2018, "shortly after . . . Guirkin commenced employment with CMH," Chief Nursing Officer ("CNO") Ursula Butts "informed . . . Guirkin that 'there are people who made up their mind about you.'" (*Id.* ¶ 17.) Guirkin, who understood this comment "to be discriminatory and indicative of a bias against homosexuals," requested clarification, and she responded that Guirkin "'would [soon] find out.'" (*Id.*)

Four months after the conversation with CNO Butts, in March 2019, "Guirkin had a personal phone conversation with CMH employee Brenda Palmore while neither individual was on their shift." (*Id.* ¶ 18.) After the conversation, CEO Burnette informed Guirkin that Burnette had discussed the conversation with the employee. (*Id.* ¶ 19.) According to Guirkin, CEO Burnette "accused [him] of having an alcohol problem" and "planned to 'keep an eye on' him." (*Id.*) Guirkin claims that "Burnette seized upon this incident to maintain a pretextual reason to mask discriminatory intent" towards Guirkin for the discriminatory actions that followed. (*Id.* ¶ 20.)

Sometime near April 11, 2019, Guirkin met informally "with a new CMH nurse practitioner, Jeanette Defelice." (*Id.* ¶ 21.) Guirkin "mentioned his husband and sexual orientation" and invited the nurse practitioner "to dinner and/or drinks with . . . Guirkin and his

3

husband," to which she agreed. (*Id.*) "At no time did . . . Guirkin violate any professional rule or policy of CMH during his conversation with [Nurse Practitioner] Defelice." (*Id.*)

Approximately a week after this dinner, on April 18, 2019, CEO Burnette informed Guirkin "that CMH had received a complaint about" Guirkin and that CMH would be "'opening an investigation against [him].'" (*Id.* ¶ 22.) Burnette told Guirkin, "'I can't tell you what it's about, but I have been on the phone with HR and the General Counsel.'" (*Id.*) Burnette refused "to provide . . . Guirkin with any additional details[,]" and placed "Guirkin on [immediate] administrative leave." (*Id.*) CEO Burnette told Guirkin "that he would use a cover story—that . . . Guirkin was called away due to a family emergency—in order to explain . . . Guirkin's absence to the rest of the staff." (*Id.*)

On April 23, 2019, CEO Burnette informed Guirkin that Defelice, the new nurse practitioner whom Guirkin had invited to dinner or drinks with his husband, had been the source of the complaint. (*Id.* ¶¶ 22–23.) During the April 23, 2019 meeting, Burnette and CMH Human Resource Representative, Deanna Washington, asked Guirkin "pointed and irrelevant" questions about his sexual orientation and spouse. (*Id.* ¶ 23.) For instance, she asked "whether . . . Guirkin referred 'to [his] "partner" as "husband" or "partner"'" during his meeting with . . . [Nurse Practitioner] Defelice." (*Id.* ¶ 25.)

The following day, on April 24, 2019, CEO Burnette, "in the presence of the Director of Human Resources, terminated . . . Guirkin's employment." (*Id.* ¶ 26.) Two days later, on April 26, 2019, CMH provided a letter of termination to Guirkin stating that the "'termination is for Cause . . . for your violations of the policies and procedures of the Company and Community Memorial Hospital.'" (*Id.*)

4

On April 30, 2019, CMH e-mailed Guirkin a letter signed by CEO Burnette and President Yackel. The April 30, 2019 Letter changed the date of Guirkin's termination to April 30 and "provided no more detail [about] the reasoning behind . . . Guirkin's termination than the April 26, 2019 letter." (*Id.* ¶ 27.)

### B. Procedural Background

Guirkin filed his two-count Complaint against CMH in this Court, alleging: (1) CMH discriminated against him on the basis of sexual orientation in violation of Title VII (the "Title VII Claim"); and, (2) CMH breached his hiring agreement in violation of Virginia law (the "Breach of Contract Claim").

CMH filed its Motion to Dismiss Guirkin's Complaint pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 4). Guirkin responded, (ECF No. 8), and Defendant replied, (ECF No. 9). CMH challenged both the sufficiency of the factual allegations in the Title VII Claim and whether sexual discrimination against a person based on his or her sexual orientation could present a cognizable claim under Title VII. (Mem. Supp. Mot. Dismiss 6–7, ECF No 5.) CMH also argued that if the Court were to dismiss the Title VII Claim, then Guirkin's Breach of Contract Claim must also be dismissed as that claim arose under state law and this Court would lack subject-matter jurisdiction. (*Id.* 10.)

Subsequently, Guirkin filed a Motion for Leave to File a Notice of Supplemental Authority, (ECF No. 10), to account for the Supreme Court of the United States' decision in *Bostock v. Clayton County, Georgia*, issued after the Parties submitted their briefing on the Motion to Dismiss.[7] 140 S. Ct. 1731 (2020). The Court granted Guirkin's Motion for Leave.

---

[7] In *Bostock v. Clayton County, Georgia*, the Supreme Court decided that in the context of Title VII that discrimination against a person for being gay or transgender is discrimination "on the basis of sex." 140 S. Ct. 1731, 1737 (2020). Justice Gorsuch, writing for the majority,

5

(ECF No. 12.) On August 17, 2020, Guirkin and CMH filed a joint motion regarding Guirkin's Notice of Supplemental Authority, (ECF No. 14), agreeing that following the Supreme Court's decision in *Bostock*, discrimination based on sexual orientation is cognizable under Title VII and the only issue remaining in CMH's Motion to Dismiss is the legal "sufficiency of the allegations" detailed in Guirkin's Complaint. (Jt. Mot. ¶ 2, ECF No. 14.) For the reasons set forth below, the Court will deny the Motion to Dismiss.

## II. Standard of Review: Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S.

---

noted that it is "impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id.* at 1741.

6

at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume all well pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

### III. Analysis

Because the Court finds that Dr. Guirkin has stated a claim of sex discrimination under Title VII, the Court will deny the Motion to Dismiss. In the Title VII Claim, Dr. Guirkin alleges that CMH discriminated against him based on his sexual orientation when CMH terminated his employment. (Compl. ¶ 43.) In the Breach of Contract Claim, Dr. Guirkin claims that his termination was not "for cause," violating the terms of his employment contract. (*Id.* ¶ 52.) CMH contends that Guirkin fails to allege sufficient facts to state a claim for sex discrimination under Title VII. Additionally, CMH argues that if the Court were to dismiss the Title VII Claim, the Breach of Contract Claim should also be dismissed because the claim is before the Court under a theory of supplemental, rather than original, jurisdiction.

Following *Bostock*, Title VII captures allegations of discrimination based on an individual's sexual orientation. The Court now considers only whether the instant Motion to

7

Dismiss successfully challenges the sufficiency of Dr. Guirkin's claim to relief for discrimination based on sexual orientation. The Court determines that Guirkin states a plausible case for discrimination based on sexual orientation and that the Breach of Contract Claim is, therefore, properly before the court under a theory of supplemental jurisdiction. Accordingly, the Court will deny CMH's Motion to Dismiss in its entirety.

### A. Guirkin Pleads Sufficient Facts to State a Claim for Sex Discrimination Under Title VII

#### 1. Legal Standard: Title VII Discrimination

Title VII states that employers cannot "discriminate against any individual with respect to [his or her] compensation, terms, conditions, or privileges of employment because of such individual's" race or sex. 42 U.S.C. § 2000e-2(a)(1).[8] "Absent direct evidence, the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class;[9] (2) satisfactory job performance; (3) adverse employment action;[10] and[,] (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

---

[8] "It shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a).

[9] Conceding that *Bostock* controls the matter at bar, CMH no longer disputes that Title VII affords protected class status based on sexual orientation. (Jt. Mot. ¶ 1, ECF No 14.) "Accordingly, the parties agree that the only issue remaining on Defendant's Motion is Defendant's argument with respect to the sufficiency of the allegations in Plaintiff's Complaint" regarding the termination of Guirkin's employment. (*Id.*) The Court will grant the Joint Motion recognizing the narrowing of CMH's Motion to Dismiss. (ECF No. 14.)

[10] CMH does not dispute that it took an adverse employment action against Guirkin when it terminated his employment. (Mem. Supp. Mot. Dismiss 4, ECF No 5.)

"In the context of a Title VII case, 'an employment discrimination plaintiff need not plead a *prima facie* case of discrimination' to survive a motion to dismiss." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)) (emphasis added). "Instead, a Title VII plaintiff is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'" *Id.* (quoting *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)). While CMH asserts that the Court should employ the framework of *McDonnell Douglas* with its burden-shifting analysis, (Mem. Supp. Mot. Dismiss at 7), this evidentiary standard applies to a motion for summary judgment, not to a motion to dismiss. *See Lawrence v. Glob. Linguist Sols. LLC*, No. 1:13cv1207, 2013 WL 3729266, at *2 (E.D. Va. Dec. 19, 2013) (quoting *Swierkiewicz*, 534 U.S. at 510–11) ("[The Supreme Court] has never indicated that the requirements for establishing a *prima facie* case under *McDonnell Douglas* also apply to the pleading standards that plaintiffs must satisfy in order to survive a motion to dismiss").

When determining if a plaintiff has pleaded sufficient plausible facts to establish a violation of Title VII, the inquiry "is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" *Id.* (quoting *Coleman*, 626 F.3d at 190). The Court, therefore, does not require proof of all the elements of a *prima facie* case of discrimination, but requires that plaintiffs plausibly meet these elements.[11] *See id.* at 617 n.8 (recognizing the elements of a *prima facie* case of discrimination under Title VII); *Robinson v. Loudon Cnty. Pub. Schs.*, No. 1:16cv1604, 2017 WL 3599639, at *3 (E.D. Va. Aug. 18, 2017) (accord); *Turner v. Richmond Pub. Schools*, No. 3:16cv256, 2017 WL 1179162, at *12 (E.D. Va.

---

[11] "An unlawful employment practice is established when the complaining party demonstrates that . . . sex . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

9

Mar. 28, 2017) (recognizing that at the Motion to Dismiss stage, "a Title VII plaintiff need not plead facts that constitute a *prima facie* case, [but] a plaintiff still bears the burden of alleging facts sufficient to state all the elements of her claim." (internal quotation marks and citations omitted, emphasis added)).

### 2. Because Guirkin Alleges Facts That Plausibly State the Elements of a Title VII Claim, Guirkin's Claim May Proceed

Dr. Guirkin states a plausible claim for sexual discrimination under Title VII. To state a claim under Title VII for discrimination on the basis of sexual orientation following the Supreme Court's decision in *Bostock*, Guirkin must allege "facts to satisfy the elements[12] of a cause of action created by" 42 U.S.C. § 2000e-2(a). *Bing*, 959 F.3d at 616–17. Guirkin has met all four elements.

As to the first element, whether Guirkin is part of a "protected class," *see Coleman*, 626 F.3d at 190, the Supreme Court's decision in *Bostock* demonstrates that Guirkin, as a gay man, belongs to a protected class of individuals. 42 U.S.C. § 2000e-2(a) (prohibiting an employer from "discharge[ing] any individual . . . because of such individual's . . . sex"); *see also Bing*, 959 F.3d at 616 n.8 (internal citation and quotation omitted). *Bostock* recently expanded the category of sexual discrimination to encompass claims based on sexual orientation, thus rendering Guirkin's claim cognizable under Title VII. 140 S. Ct. at 1754 ("[a]n employer who

---

[12] While *Bing* does not require a plaintiff to prove in the complaint a *prima facie* case of discrimination under the *McDonnell Douglas* framework, *Bing* puts forth a modified test, derived from the elements of a Title VII claim, that does not mandate comparator evidence. The plaintiff "must establish (1) membership in a protected class, (2) discharge, (3) while otherwise fulfilling Defendants' legitimate expectations at the time of his discharge, and (4) under circumstances that raise a reasonable inference of unlawful discrimination." *Bing*, 959 F.3d at 616 n.8 (internal quotation marks and citations omitted); *see also Whitehurst v. Bedford Cty. Sch. Bd.*, No. 6:19cv10, 2020 WL 3643132, at *5 (W.D. Va. July 6, 2020) (applying the *Bing* elements in a Title VII claim and noting that "*Bing* made no reference to comparator evidence as being required for the *McDonnell Douglas* framework at all, let alone at the pleading stage").

10

fires an individual merely for being gay . . . defies the law"). Accordingly, Guirkin meets the gatekeeping requirement of membership within a protected class to proceed with a Title VII employment discrimination claim.

As to the second element of "satisfactory job performance," Dr. Guirkin states facts evincing satisfactory job performance at the time of his termination. *Coleman*, 626 F.3d at 190. A plaintiff "must show that at the time of his dismissal, he [or she] was performing his [or her] job in a way that met the legitimate expectations of Defendants." *Pettis v. Nottoway Cnty. Sch. Bd.*, 980 F. Supp. 2d 717, 725 (E.D. Va. 2013) (citing *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996); *see also Bing*, 959 F.3d at 616 n.8 (plaintiff must show he or she was "otherwise fulfilling Defendants' legitimate expectations at the time of his [or her] discharge") (internal citation and quotation omitted). The Complaint indicates that Guirkin was qualified for the type of employment for which he was hired, evidenced by the executed Physician Employment Agreement and the decision by the Hiring Committee to retain him as Vice President. (Compl. ¶¶ 9–10, 13.) Indeed, CMH does not assert that Guirkin deviated from satisfactory job performance. *See Proctor v. Fairfax Cnty.*, No. 1:13cv1427, 2014 WL 6473712, at *2 (E.D. Va. Nov. 14, 2014) (finding satisfactory job performance when parties do not dispute that the employee met legitimate expectations). Because Guirkin has set forth facts showing that his job performance was satisfactory, he meets the second element of a Title VII sex discrimination claim.

As to the third element, "adverse employment action," CMH took an obvious adverse employment action against Dr. Guirkin by terminating his employment before his contract term expired. *Coleman*, 626 F.3d at 190. In the United States Court of Appeals for the Fourth Circuit, it is well-settled that firing or discharging an employee constitutes an adverse

11

employment action under the meaning of Title VII. *See Swaso v. Onslow Cnty. Bd. of Educ.*, 698 Fed. App'x 745, 748 (4th Cir. 2017) (per curiam) ("An adverse action is one that constitutes a significant change in employment status, such as . . . firing"); *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) ("An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment") (internal quotation marks and citations omitted). Indeed, "discharg[e]" is specifically named as an element in *Bing*. 959 F.3d at 616.

Dr. Guirkin held a full-time position as Vice President of Medical Affairs/Chief Medical Officer for CMH from November 2018 until his termination in April 2019. (Compl. ¶¶ 6, 10–11, 17.) Two days after CEO Scott Burnette terminated Guirkin's employment, CMH provided a signed letter of termination to Guirkin. (*Id.* ¶¶ 26–27.) While CMH's letter maintains that CMH fired Guirkin for cause, CMH does not contest that its termination of Guirkin's employment is an adverse employment action under Title VII. (*Id.* ¶ 28.) Therefore, because Dr. Guirkin alleges facts showing that he was "discharged" within the meaning of Title VII, he meets the third element of a Title VII sex discrimination claim. *Coleman*, 626 F.3d at 190.

As to the fourth element, that Dr. Guirkin was subjected to "different treatment from similarly situated employees outside the protected class," read favorably, Guirkin states facts showing unlawful discrimination based on the totality of the circumstances sufficient to overcome the need to demonstrate a similarly situated comparator. *Coleman*, 626 F.3d at 190. Guirkin does not allege any comparator.[13] The Fourth Circuit has repeatedly held that "a

---

[13] Moreover, in light of Guirkin's leadership position, an ostensible comparator would be difficult to pinpoint. Although Guirkin's individual allegations do not by themselves prove discriminatory animus, the totality of circumstances surrounding his termination gives rise to the inference that Guirkin was fired, at least in part, because of his sexual orientation. *See Bostock*, 140 S. Ct. at 1741 ("[a]n employer violates Title VII when it intentionally fires an individual employee based in part on sex. It doesn't matter if other factors besides the plaintiff's sex

12

plaintiff is not required to identify a similarly situated [] comparator to prove [his or] her discrimination claim, so long as [he or] she can establish an inference of unlawful discrimination through other means." *Swaso*, 698 F. App'x at 748 (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545-46 (4th Cir. 2003)); *see also Bing*, 959 F.3d at 616 n.8 (requiring, in lieu of a comparator, "circumstances that raise a reasonable inference of unlawful discrimination"); *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) ("Plaintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim"). Therefore, "in appropriate cases, courts may find that the plaintiff has stated a *prima facie* case despite failing to identify a similarly situated comparator where the plaintiff's evidence supports an inference of discrimination." *Mabry v. Capital One, N.A.*, No. 8:13cv2059, 2013 WL 6410983, at *2 (D. Md. Dec. 6, 2013) (citing *Miles v. Dell, Inc.*, 429 F.3d 480, 487 (4th Cir. 2005)). Looking to Guirkin's Complaint, he has alleged facts supporting an inference of discriminatory conduct. Indeed, the Fourth Circuit has recently held that the appropriate test for the final element is whether the plaintiff has shown that the employer's action occurred "under circumstances that raise a reasonable inference of unlawful discrimination." *Bing*, 959 F.3d at 616 n.8 (internal quotations marks and citation omitted).

Dr. Guirkin "can establish an inference of unlawful discrimination through other means." *Swaso*, 698 Fed. App'x at 748. Guirkin notes that the Hiring Committee was unaware of his sexual orientation at the time of his hiring but learned of his sexual orientation in the weeks following when Guirkin "openly referenced and introduced co-workers to his husband."

---

contributed to the decision"); *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017) (concluding that a court "may infer discriminatory intent from evidence of a general pattern of . . . discrimination in the practices of a defendant"). Thus, Guirkin does not need to point to a heterosexual male comparator, for "[h]owever helpful a showing of a . . . comparator may be to proving a discrimination claim, it is not a necessary element of such a claim." *Bryant*, 333 F.3d at 546.

13

(Compl. ¶¶ 13, 15.) Once Guirkin's colleagues became aware of Guirkin's sexual orientation, Guirkin alleges that he was subject to bias and to discriminatory comments. As explained above, Guirkin alleges that CNO Ursula Butts informed him that "'there are people who made up their mind about you.'" (*Id.* ¶ 17.) When he asked for clarification, she allegedly responded that Guirkin "'would [soon] find out.'" (*Id.*) After CMH opened an investigation against Guirkin for an undisclosed complaint, Guirkin learned at an April 2019 meeting that a female colleague, to whom Guirkin had "mentioned his husband and sexual orientation" and who then accepted his invitation for "dinner and/or drinks with . . . Guirkin and his husband," was the source of the complaint. (*Id.* ¶¶ 21–23.) At the meeting, CEO Burnette and Human Resource Representative, Deanna Washington, asked Guirkin "pointed and irrelevant" questions about his sexual orientation and spouse. (*Id.* ¶ 23.) CMH terminated Dr. Guirkin's employment the next day. (*Id.* ¶ 26.)

The close temporal proximity between the veiled remarks and the scrutiny of Dr. Guirkin's sexual orientation on the one hand, and Guirkin's firing on the other, generates an inference of discriminatory intent sufficient to withstand a motion to dismiss in the absence of a heterosexual male comparator.[14] *See Whitehurst v. Bedford Cnty. Sch. Bd.*, No. 6:19cv10, 2020 WL 3643132, at *7 (W.D. Va. July 6, 2020) (finding discriminatory intent without a comparator "[g]iven the totality of the circumstances" in the complaint); *Bryant*, 333 F.3d at 545 (finding a specific comparator unnecessary when "other circumstantial evidence suggests discrimination")

---

[14] In closely related race-discrimination claims arising under 42 U.S.C. § 1981, "temporal proximity may suffice to establish causation when protected activity and adverse action are very close." *Ali v. BC Architects Engineers, PLC*, No. 19-1582, --- Fed. App'x ---, 2020 WL 6075663, at *4 (4th Cir. Oct. 16, 2020); *see also id.*, at *2 n.3 ("Although *Bing* . . . assessed claims under Title VII . . . we have recognized the similarity of a race discrimination claim pursued under that statute and one pursued under § 1981").

(internal citations omitted); *see also Westmoreland v. Prince George's Cnty, Md.*, No. 6:09cv2453, 2011 WL 3880422, at *5 (D. Md. Aug. 31, 2011) (finding a plausible claim of discriminatory intent and concluding that "discovery could reveal the existence of one or more similarly situated comparators" after reviewing the complaint "in its entirety").

Dr. Guirkin pleads facts which, taken together, demonstrate that his firing occurred "under circumstances that raise a reasonable inference of unlawful discrimination." *Bing*, 959 F.3d at 616 n.8 (internal quotation marks and citation omitted); *see also Swaso*, 698 F. App'x at 748 (also discussing an inference of unlawful discrimination). Guirkin thus meets the fourth and final element of a Title VII sex discrimination claim. Accordingly, the Court will deny CMH's Motion to Dismiss Guirkin's Title VII Claim.

### 3. **Breach of Contract**

Because the Court has found that Dr. Guirkin alleges a plausible Title VII claim for discrimination based on sexual orientation, the Court may exercise supplemental jurisdiction over Guirkin's Breach of Contract Claim.[15]

CMH argues that this Court lacks subject-matter jurisdiction over Guirkin's Breach of Contract Claim because Guirkin's federal discrimination claim is not cognizable under Title VII. (Mem. Supp. Mot. Dismiss 10.) Because the Court finds that Dr. Guirkin has stated a claim for sex discrimination under Title VII, it properly exercises supplemental jurisdiction over Guirkin's Breach of Contract Claim which arises out of the same case or controversy: CMH's decision to fire him. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have

---

[15] "To state a claim for breach of contract under Virginia law, a plaintiff must plausibly allege in federal court: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of the obligation; and, (3) an injury or harm caused by the defendant's breach." *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 860 (E.D. Va. 2016) (citing *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)).

original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

CMH does not challenge whether Dr. Guirkin has stated a claim for breach of contract. Therefore, taking the well-pleaded allegations in the Complaint as true, as the Court must at this procedural posture, the Breach of Contract Claim may also proceed under a theory of supplemental jurisdiction, and the Court will deny CMH's Motion to Dismiss as to the Breach of Contract Claim.

## IV. Conclusion

For the foregoing reasons, the Court will deny Defendant CMH's Motion to Dismiss brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 4.) The Court will grant the Parties' Joint Motion. (ECF No. 14.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 11/20/20
Richmond, Virginia